MANION, Circuit Judge,
concurring in part, dissenting in part.
I concur with the court’s conclusion that qualified immunity should be denied to Mayor Hyde on plaintiff Surita’s claim, and that qualified immunity should be accorded to Police Chief Biang on plaintiff Blanks’s claim. But I disagree with the court’s conclusion that Biang was “personally involved in the application of the Assembly Ordinance” against plaintiff Carrasco. (Opinion at 23.) The record evidence does not support this conclusion. Because there is no evidence that Biang was personally involved in the violation of Carrasco’s constitutional rights, he is entitled to qualified immunity. Therefore, I concur in part and dissent in part.
As the court notes, Carrasco advanced three free-speech claims against Police Chief Biang: (1) that Biang applied the Assembly Ordinance in a discriminatory fashion; (2) that Biang applied the Assembly Ordinance in retaliation against Carrasco; and (3) that Biang applied the Assembly Ordinance to chill Carrasco’s future speech. (Opinion at 22-23.) The common thread that runs through these claims is Biang’s alleged improper application of the Assembly Ordinance against Carrasco. If so, it is Biang’s application of the Assembly Ordinance that allegedly caused a violation of Carrasco’s constitutional rights.
*881 When determining qualified immunity in this instance, we need to examine whether Biang actually caused a violation of Carrasco’s constitutional rights. Pearson v. Callahan, 555 U.S. 223, 232, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). As the court correctly states, “[a]n official causes a constitutional violation if he sets in motion a series of events that [he] knew or reasonably should have known would cause others to deprive plaintiff of constitutional rights.” Brokaw v. Mercer Cnty., 235 F.3d 1000, 1012 (7th Cir.2000) (citation omitted). The court concludes that Biang caused a violation of Carrasco’s constitutional rights by organizing a meeting with city attorney Gretchen Neddenriep, by sending a deputy to Carrasco’s house to ask her to attend that meeting, and by calculating the number of officers that would be needed to patrol Carrasco’s planned protest. (Opinion at 23.) This limited recitation of the facts leads the court to an erroneous conclusion.
Biang did initiate a meeting with Carrasco after he received word that Carrasco was planning a protest rally outside city hall that would coincide with a city council meeting. And a uniformed police officer did show up at Carrasco’s door to invite her to come to the meeting — but only after a call to Carrasco’s home had gone unanswered. As for the purpose of the meeting, the record also clearly shows that Biang’s aim was “[t]o establish ground rules for where people were going to be [during the protest].” Aware that there were likely “First Amendment issues” surrounding the city’s response to Carrasco’s protest, Biang also invited Neddenriep so that she could cover any legal issues. Biang averred that, at the time he called for the meeting, he was not aware of any enforcement action that might be taken against Carrasco for not complying with the Assembly Ordinance. At the meeting, it is undisputed that Neddenriep provided Carrasco with a copy of the Assembly Ordinance and went through the permitting and fee requirements. Indeed, Carrasco herself stated that Neddenriep did most of the talking during the meeting and that Biang’s comments were limited to logistics and public safety concerns. This testimony corroborates Biang’s contention that it was Neddenriep, not the police department, who decided to apply the Assembly Ordinance.
With this additional factual background, it is apparent that Neddenriep, not Biang, set in motion a series of events that she knew or reasonably should have known would cause others to deprive Carrasco of her constitutional rights. The undisputed evidence demonstrates that Biang called the meeting out of a concern for public safety, and that Biang’s estimate of the number of police officers who were needed to patrol the protest was likewise made out of a concern for public safety.[1] Moreover, Biang summoned Carrasco to the meeting with a uniformed officer only after the police had attempted to contact Carrasco via telephone. Most convincingly, Biang’s unopposed testimony shows that he had no idea that Neddenriep would seek to impose the Assembly Ordinance’s requirements on Carrasco.
Additionally, the court emphasizes the fact that, before the meeting with Carrasco, the Assembly Ordinance had never *882 been applied despite the fact that more than 500 applications had been filed previously. (Opinion at 30.) But this fact actually cuts in favor of Biang. Indeed, because the city had never applied the Assembly Ordinance, Biang could not have known — nor could he have reasonably foreseen — at the time he called the meeting that Neddenriep would apply the Assembly Ordinance to Carrasco.
That said, for whatever reason, Carrasco did not name Neddenriep as a defendant. The uncontroverted testimony in this case points to Neddenriep as the official responsible for applying the Assembly Ordinance against Carrasco. Because no reasonable fact finder could conclude that Biang did anything that he knew or should have known would result in a violation of Carrasco’s constitutional rights, I would reverse the district court and hold that qualified immunity applies to Carrasco’s claims against Biang. Accordingly, I dissent.

. The court acknowledges that varying the number of officers assigned to different events does not violate the Constitution. (Opinion at 28.) The court concludes that Biang's violation was in calculating the permitting fees. But it is undisputed that Neddenriep, not Biang, provided Carrasco with the total fee amount. Therefore, by the court's own reasoning, Biang did not effect a constitutional violation by giving Neddenriep an estimate of the number of police officers needed to patrol the protest.